Oldham, J. Harrison brought an action of detinue in the Circuit Court of Pulaski county, against Lindsay, for a negro woman. Upon the trial the jury found the following facts as a special verdict: “That William K. Paulding was the original owner of the slave in question, and, on the 15th day of June, 1835, in the State of Alabama, conveyed her to plaintiff, by deed of that date then executed, said Paul-ding, Harrison, and Harriet Kelly, then residing there, upon trust, that he, his executors, administrators and assigns, should permit said slave and her increase to remain in the possession and under the control of Harriet Kelly, her heirs, executors and administrators, and should permit said Harriet to receive the rents, issues and profits, and the services of the said girl and her future increase, to her and their sole use and benefit for ever. That said slave was thereafter delivered to said Harriet Kelly, who afterwards removed to the State of Mississippi, carrying said negro with her, and there intermarried with Bichard Jeffries, in the year 1835 or 1836, the said Harriet being then about twenty years of age; that said slave remained in the possession of said Harriet from the time said deed was made until 1837 or 1838; until said Jeffries and Harriet removed to Arkansas; where they continued to reside; keeping said negro in possession; until she was taken by the sheriff of Saline comity in this State; under an execution against áaid Jeffries; just before the February term; 1840, of the Saline Circuit Court, on which execution she was sold and purchased under such and on such sale by the defendant. Public notice and particular notice to said Lindsay having been first given before and at the sale, by the attorney of Mrs. Jeffries; that the plaintiff claimed the negro as being the property of said plaintiff as trustee for Mrs. Jeffries, and said deed being then produced and shown to and its contents made known to said Lindsay; which sale was made on the 25th day of February, A. D. 1840,” <fcc. Upon the special verdict rendered by the jury, the Circuit Court gave judgment for the plaintiff below, from which the defendant has brought error to this court. The question presented, is whether the husband, by virtue of the bill of sale and marriage with the beneficiary, acquired such an interest in, and title to, the slave, as could be levied upon and sold under an execution against him. The estate granted to Harriet Kelly, was not a life or other limited estate; but was absolute and indefeasible. The gifts of the use, possession, rents, issues and profits of the negro was full and absolute, and depended upon no contingency. Having the possession of the negro by such a title, she could have sold her as any other of her legal property, without the consent of the trustee, even though a clause against alienation had been inserted in the deed. It is impossible to tie up the use and enjoyment of a personal chattel so as to create in the donee an unlimited estate which he may not alien. Even a life estate cannot be so limited and restricted. Woodmeston v. Walker, 2 Rus. & My. 197. Massey v. Parker, ib. 174. Brown v Pocock, ib. 218. Brandon v. Robinson, 18 Ves. 429. Such fetters may be imposed upon the estates of married females, of estates settled upon females in contemplation of marriage during coverture, but they cease upon the determination of the coverture. In this case there does not appear to be any attempt to exclude the marital right of the future husband. No mention is made of the husband, nor any allusion to marriage. By the marriage all the personal chattels of the wife, of which she was in possession, vested in the husband, and also the right to reduce her dioses in action into possession, during coverture. The right to the' absolute possession and services of the slave by the marriage vested in the husband, and he was clothed with the same unlimited authority over her that his wife was while a feme sole. While single, she could have sold and conveyed the slave to any other person, and by the marriage she conveyed her to her husband. The case of Carleton & Co. v. Banks, 7 Ala. Rep. 32, neio series, is much stronger for the trustee than the one before the court. Certain negroes were conveyed to a trustee upon trust, that he would permit Harriet Smith, who was then a feme sole, “to have and retain the possession of the slaves and their increase, and to receive and enjoy the profits thereof during the time of her natural life, and at her death said negro girls with their increase to descend to the issue of her body, and in the event she should die without issue, then,” remainder to specified persons. Miss Smith afterwards intermarried with Hatfield, and one of the slaves was levied upon and sold as his property. The court held, that the life estate of the wife ivas subject to sale under execution in favor of the creditors of the husband. It is true, that Judge Goldthwaite dissented from the opinion of the majority of the court, but upon grounds not applicable to the case under consideration. He held that the legal title to the slave vested in the trustee, and must remain in him until the complete execution of the trust, unless he should be removed by competent authority; that unless the legal estate should remain in him he could not after the determination of the life estate place the slave in the possession of the person in remainder without a trespass upon some one having the legal title. No such reasons apply in this case. There is no remainder dependent upon any particular estate, which is to be upheld and supported by the legal title remaining in the trtislee. There is no act remaining for him to perform, but every duty required of him by the terms of the deed had been discharged, and so far as he is concerned the trust has been fully executed. If the legal title to the slave still remains in the trustee, when will it determine and in whom will it vest? If it has not already vested in Mrs. Jeffries, will it ever vest in her or her heirs? What duty remains to be performed by the trustee in the execution of the trust created by the deed? There is none. We are of opinion that the negro girl in controversy was subject to execution and sale at the instance of Jeffries’ creditors, and that, the title acquired by Lindsay was valid.. Judgment reversed.